UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

In re:

BENDER SHIPBUILDING AND
REPAIR CO., INC.,

    Debtor.

Case No. 09-12616-MAM

BENDER SHIPBUILDING AND
REPAIR CO., INC.,

    Plaintiff,

v.

Adv. Proc. No.: 11-00116

OIL RECOVERY COMPANY INC.
OF ALABAMA,

    Defendant.

**ORDER GRANTING BENDER SHIPBUILDING'S MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING OIL RECOVERY COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Eric J. Breithaupt, Attorney for the Plan Administrator, Birmingham, Alabama
Theodore L. Hall, Attorney for Oil Recovery Inc., Mobile, Alabama

This case is before the court on Bender Shipbuilding and Repair Co., Inc.'s Motion for Summary Judgment and Oil Recovery Company Inc. of Alabama's cross motion for summary judgment. The court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. The court has the authority to enter a final order pursuant to 28 U.S.C. § 157(b)(2). For the reasons detailed below, Bender Shipbuilding's Motion for Summary Judgment is GRANTED IN PART and Oil Recovery's Motion for Summary Judgment is DENIED.

1

## FACTS

The Plan Administrator for Bender Shipbuilding & Repair Co., Inc. ("Bender") filed the underlying adversary proceeding on June 8, 2011 seeking recovery of certain prepetition transfers from Bender to Oil Recovery Company Inc. of Alabama ("ORC"). Bender alleges that the transfers in question were preferential pursuant to 11 U.S.C. § 547 and seeks turnover via 11 U.S.C. § 542. Bender also objected to a $196,640.25 proof of claim filed by ORC and sought recovery of a $10,000 post-petition transfer made by Bender to ORC.

The parties exchanged discovery and, on July 24, 2012, Bender filed a motion for summary judgment as to all of its claims. In support of its motion, Bender filed the affidavits of Dan Scouler, current Plan Administrator for Bender, and Joseph Mangin, Chief Financial Officer of Bender Shipbuilding. ORC responded to Bender's motion and filed a cross motion for summary judgment on August 17, 2012 asserting the preference defenses of new value (11 U.S.C. § 547(c)(4)) and ordinary course of business (11 U.S.C. § 547(c)(2)). This Court heard oral argument on August 31, 2012 and took the matter under advisement.

The parties do not dispute the following facts derived from Bender's motion for summary judgment:

1. On June 9, 2009, the underlying bankruptcy case was commenced through the filing of an involuntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code. By Order entered on July 1, 2009, Bender consented to the bankruptcy filing and the case was converted to a Chapter 11.

2. On December 9, 2010, a "Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Official Committee of Unsecured Creditors and Debtor" was confirmed by Order entered on that date. Pursuant to the Plan and the Confirmation Order,

2

Case 11-00116    Doc 60    Filed 09/11/12    Entered 09/11/12 15:03:50    Desc Main
Document      Page 2 of 11

Scouler & Company was appointed as Plan Administrator. In the capacity of Plan Administrator, acting for and on behalf of Bender, Scouler & Company was authorized to pursue certain litigation claims, including but not limited to, avoidance actions under Chapter 5 of the United States Bankruptcy Code.

3. Bender's bankruptcy case was caused by a confluence of factors, including a lack of funds to service its indebtedness or the ordinary expenses of day-to-day operations. By January and February of 2009, Bender was in substantial breach of multiple shipbuilding contracts with its customers. Those breaches resulted in the termination of those contracts which further negatively impacted Bender's cash flow. At the same time, Bender had multiple forbearance agreements in place with each of its secured lenders due to continuing material defaults with respect to virtually all of its credit arrangements. Amid multiple allegations of fraud, mismanagement and other misconduct, four creditors filed an involuntary Chapter 7 bankruptcy petition against Bender on June 9, 2009. At the time of the petition filing, Bender was unable to pay any of its debts as they became due, and was hopelessly insolvent.

4. Bender's books and records reflect that ORC received payments from Bender in the form of checks within the 90 days immediately preceding the petition date in the aggregate amount of $123,837.22, which Transfers were property of Bender. As part of the transfers received by Bender, the sum of $10,000.00 was received by ORC following June 9, 2009 in payment of a pre-petition indebtedness. Each of the transfers made by Bender to ORC are itemized as follows:

> Ck# 392344 (3/19/09) - $20,315.00
> Ck# 392549 (3/27/09) - $20,000.00
> Ck# 392765 (4/6/09) - $23,898.00
> Ck#393062 (4/17/09) - $19,561.00
> Ck#393196 (4/24/09) - $20,063.25
> Ck#394025 (5/29/09) - $10,000.00

3

Case 11-00116    Doc 60    Filed 09/11/12    Entered 09/11/12 15:03:50    Desc Main
Document      Page 3 of 11

Ck#394220 (6/5/09) - $10,000.00

5. According to the books and records of Bender, the Defendant is entitled to a new value defense.

6. The Defendant filed Proof of Claim Number 94 in the amount of $196,640.25 in the Bender bankruptcy.

In addition, the following facts, gathered from the affidavit of F. Paul Jones, are undisputed:

Since its incorporation in 1988, ORC has been in the business of cleaning, and rendering gas free, tanks and marine vessels. Bender has been a major customer of ORC since 1988. F. Paul Jones ("Mr. Jones"), president of ORC, described the business conducted between ORC and Bender as follows: "Bender would routinely…issue a purchase order to ORC for work; ORC would perform the work; and when the work was done, ORC would present an invoice to Bender for payment." Mr. Jones explained that the invoices required payment within 30 days, but that Bender seldom paid within that time frame. However, Mr. Jones stated that in 2008, Bender's payments "came even later and later" necessitating ORC to contact Bender in September of 2008 regarding 42 outstanding invoices owed to ORC. In response, Bender promised to make two payments of $26,000 within the subsequent two weeks.

Despite those payments, Bender's debt to ORC grew and in January of 2009, ORC sent a letter to Bender explaining, in Mr. Jones' words, that "ORC could no longer afford to do business with Bender" and including a "statement listing all 51 unpaid invoices totaling $292,378.00." Bender responded by making 3 payments totaling $42,000 from January 16, 2009 to February 2, 2009. On February 6, 2009, Mr. Jones developed a repayment plan with Bender in which ORC would resume services if Bender agreed to pay ORC $20,000 a week for 4 weeks, a plan which included the payments already made in January and February. According to Mr.

4

Jones, Bender made those additional payments within the period of March 11, 2009 through June 9, 2009. ORC concedes that those payments were made within the preference period.

LAW

A motion for summary judgment is controlled by Rule 56 of the Federal Rules of Civil Procedure, which is applicable to bankruptcy proceedings pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure. A court shall grant summary judgment to a moving party when the movant shows that "there is no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056(c). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2502, 91 L.Ed. 2d 2020 (1986), the Supreme Court found that a judge's function is not to determine the truth of the matter asserted or weight of the evidence presented, but to determine whether or not the factual disputes raise genuine issues for trial. *Anderson*, 477 U.S. at 249-50. In making this determination, the facts are to be looked upon in the light most favorable to the nonmoving party. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986); *Allen v. Bd. Of Public Educ. for Bibb County*, 495 F.3d 1306 (11th Cir. 2007). The moving party bears the burden of proving there is no issue as to any material fact and that judgment should be entered as a matter of law. Fed. R. Bankr. Pro. 7056.

In this case, the parties filed cross motions for summary judgment. However, in the interests of continuity and efficiency, the two motions will be considered together, apportioning the burdens and presumptions where appropriate.

Bender alleges that ORC received payments during the preference period that are recoverable pursuant to 11 U.S.C. § 547(b). It is Bender's burden to demonstrate that the elements of § 547(b) are met while establishing the absence of a genuine issue of material fact.

5

*In re Ralar Distributors, Inc.*, 4 F.3d 62, 67 (1ˢᵗ Cir. 1993). Section 547(b) allows a trustee (or debtor in possession) to avoid any transfer of an interest of the debtor in property that is:

>  (1) to or for the benefit of a creditor;
>
>  (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
>  (3) made while the debtor was insolvent;
>
>  (4) made--
>
>>  (A) on or within 90 days before the date of the filing of the petition; or
>>
>>  (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
>  (5) that enables such creditor to receive more than such creditor would receive if--
>
>>  (A) the case were a case under chapter 7 of this title;
>>
>>  (B) the transfer had not been made; and
>>
>>  (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The undisputed facts establish that the payments made by Bender to ORC within the 90 days leading up to the petition date, June 9, 2009, meet the requirements of § 547(b). Bender has met its burden to show that ORC received avoidable preferences from Bender. The payments received by ORC during the preference period total $123,837.25.

However, the inquiry does not end there. The Bankruptcy Code affords parties who receive preferential payments certain defenses. In this case, two preference defenses have been invoked by ORC: 11 U.S.C. § 547(c)(4) and (c)(2). In order to prevail on summary judgment, ORC must prove that no genuine issue of material fact exists as to its defenses and that it is entitled to judgment as a matter of law. Alternatively, ORC may defeat Bender's motion for

6

summary judgment by demonstrating that a genuine issue of material fact exists regarding the efficacy of one of the defenses. Bender also seeks summary judgment regarding the defenses. The Court will allocate the summary judgment burden to Bender when considering its arguments. Each defense will be discussed separately.

1.

The first defense asserted by ORC is the subsequent new value defense codified at 11 U.S.C. § 547(c)(4). Section 547(c)(4) states that the trustee may not avoid transfers that were subsequently followed by extensions of unsecured new value. Courts in the Eleventh Circuit require that the creditor "(1) have received a transfer that is otherwise avoidable as a preference under § 547(b); (2) have advanced new value to the debtor on an unsecured basis; and (3) the new value must remain unpaid as of the filing date of the bankruptcy petition." *In re Jet Florida System, Inc.*, 841 F.2d 1082, 1084 (11th Cir. 1988). Importantly, the new value extended must be subsequent to the preferential payment. *In re Schabel*, 338 B.R. 376, 380 (Bankr. E.D. Wis. 2005).

Bender concedes that ORC is entitled to a new value defense. However, the parties disagree as to the proper amount. Bender asserts that ORC extended subsequent new value in the amount of $30,209. In contrast, ORC argues that it is entitled to a new value credit of $35,016. The difference in values is explained by ORC's inclusion of two invoices totaling $4,280 dated March 20, 2009. Those invoices relate to two different projects where ORC provided services to Bender and the payment terms are Net 30. Bender argues that the invoices predate the first preference payment and are, therefore, not subsequent new value. In this court's view, this creates a genuine issue of material fact.

7

The affidavit of Dan Scouler, Plan Administrator, submitted by Bender, indicates that the first preference payment received by ORC occurred on March 19, 2009. ORC does not dispute this. Thus, as argued by Bender, any value extended by ORC prior to the March 19, 2009 payment would not constitute new value under § 547(c)(4). However, it is unclear when the new value reflected in the two invoices was actually extended. The invoices do not represent potential new value. Instead, the potential new value would be the labor, equipment, or materials provided to Bender by ORC. Based upon the documents provided by the parties, it is not clear to the court whether the labor, equipment, and materials furnished by ORC occurred prior or subsequent to the first preferential transfer on March 19, 2009. While it seems likely that the work reflected in the invoices occurred prior to March 19, 2009, the invoices are dated March 20, 2009 and it is conceivable that ORC's work (the new value) could have occurred sometime after the March 19 preference payment but before the delivery of the March 20, 2009 invoice. The court does not have sufficient evidence before it to make that determination. As such, a genuine issue of material fact exists as to whether the proper new value credit is $30,209 or $35,016. Still, it is clear to the court that ORC is entitled to a new value defense of at least $30,209, therefore, summary judgment will be granted to that extent.

2.

The second defense relied upon by ORC is the ordinary course of business defense from 11 U.S.C. § 547(c)(2). It states that the trustee may not avoid a transfer that is a preference under § 547(b) to the extent that the transfer was (1) in payment of a debt incurred by the debtor in the ordinary course of business of the debtor and the transferee and *either* (2) made in the ordinary course of business of the debtor and the transferee or (3) made according to ordinary business terms. It is significant that the second and third requirements are stated in the

8

Case 11-00116    Doc 60    Filed 09/11/12    Entered 09/11/12 15:03:50    Desc Main
Document      Page 8 of 11

disjunctive. The parties do not dispute that the first requirement is satisfied because the transfers in question were payments of debts incurred by the debtor in the ordinary course of business. Beyond that, the parties disagree as to the applicability of the defense and each request summary judgment as to their position.

The parties' disagreement regards the second prong of § 547(c)(2). Courts interpret that "requirement to be subjective in nature insofar as it requires courts to consider whether the transfer was ordinary in relation to the 'other business dealings between *that* creditor and *that* debtor.'" *In re Globe Manufacturing Corp.*, 567 F.3d 1291, 1298 (11th Cir. 2009) (quoting *In re Fred Hawes Org., Inc.*, 957 F.2d 239, 244 (6th Cir. 1992)) (emphasis in original).

ORC argues that the preference payments it received were ordinary as between it and Bender. It asserts that the parties entered into an agreement in January of 2009 establishing a "new normal" payment structure between the parties and that the preference payments were pursuant to that "ordinary course" business arrangement. While ORC acknowledges that its business relationship with Bender extends some twenty years into the past and that the agreement in January of 2009 differed from the prior business transactions between the parties, it asserts that the new agreement is sufficiently ordinary as between the parties to satisfy § 547(c)(2). ORC submits that the following language from the 11th Circuit's opinion in *In re Craig Oil*, 785 F.2d 1563 (11th Cir. 1986), supports its "new normal" argument:

> In describing the ordinary course of business exception, Congress stated that 'its purpose is to leave undisturbed normal financial relations, because [such an exception] does not detract from the general policy of the preference section to *discourage unusual action by either the debtor or his creditor during the debtor's slide into bankruptcy*.'

*Id.* at 1566 (emphasis added). ORC claims that the payments made during the preference period were made pursuant to an agreement created prior to the debtor's slide into bankruptcy and,

9

therefore, were not unusual. Rather, they were, at that point, part of the ordinary course between the parties.

Bender disagrees. Bender states that the ordinary course between the parties must be in reference to the business dealings between the parties that occurred over their entire twenty-year business relationship. In Bender's view, the agreement between the parties entered into in January of 2009 was unusual when compared to the ordinary business relationship enjoyed by the parties since 1988. As such, it claims that the payments made during the preference period were anything but ordinary and requests summary judgment as to the defense.

This Court believes that Bender's view is the better reasoned. In *Craig Oil* the 11th Circuit stated the following:

> [Section] 547(c)(2) should protect those payments which do not result from 'unusual' debt collection or payment practices. To the extent an otherwise 'normal' payment occurs in response to such practices, it is without the scope of § 547(c)(2). Thus, whenever the bankruptcy court receives evidence of unusual collection efforts, it must consider whether the debtor's payment was in fact a response to those efforts.

785 F.2d at 1566. The payments made by Bender to ORC pursuant to the January agreement result from unusual debt collection or payment practices. ORC concedes that in 2008 Bender's payments were made later and later until, at the beginning of 2009, ORC was forced to stop performing services for Bender because Bender had accrued such a large arrearage to ORC. The payment agreement was a result of ORC's communication to Bender that it would stop providing services—an unusual debt collection practice between the parties. No evidence was presented indicating that such an agreement was ever, much less ordinarily, entered into between the parties during their twenty-year business relationship. Therefore, the payments made pursuant to that agreement that occurred during the preference period were incident to that unusual agreement and were not ordinary between the parties as contemplated by § 547(c)(2).

10

This court is satisfied that no genuine issue of material fact exists regarding whether the payments made to ORC during the preference period were made in the ordinary course between the parties. Therefore, it is appropriate to grant Bender's motion for summary judgment regarding that issue and to deny ORC's.

3.

One final issue remains. In conjunction with its motion for summary judgment, Bender asked this court to find that ORC improperly received a $10,000 post-petition transfer from Bender on or around the petition date. ORC did not offer a defense to this allegation. Therefore, this court finds that ORC received that $10,000 payment post-petition and that Bender is entitled to its turnover.

IT IS ORDERED

1. Bender's motion for summary judgment is GRANTED to the extent that the payments made to ORC during the 90 days preceding Bender's bankruptcy were preferential pursuant to 11 U.S.C. § 547(b), subject to a new value credit.

2. ORC is entitled to a new value defense to Bender's preference allegations of at least $30,209. However, it remains an open question as to whether ORC is entitled to any additional credit for subsequent new value. Therefore, as to that issue, both Bender's and ORC's motions for summary judgment are DENIED.

3. Bender's motion for summary judgment regarding the ordinary course of business defense is GRANTED and ORC's motion for summary judgment regarding that issue is DENIED.

4. ORC is ordered to turn over the $10,000 post-petition transfer it received from Bender on or around the petition date.

5. The underlying adversary proceeding is set for status on October 2, 2012 at 8:30 a.m.

Dated: September 11, 2012

*Margaret A. Mahoney*
MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE